## Crown Coal & Tow Company v. Herman Henry Koenig.

1. ASSUMED RISK—*what is.* Where an employe, at the time he arrived at the place where his work was to be done, saw its then condition and was as competent to know, realize and fully understand the extent and nature of the risk and danger as any one else, and knew as well how to remove the peril and to protect himself while doing so, as any servant the master could have selected for that purpose, he is deemed to have assumed the risk.

Action on the case for personal injuries. Appeal from the Circuit Court of St. Clair County; the Hon. ROBERT D. W. HOLDER, Judge, presiding. Heard in this court at the August term, 1904. Reversed with finding of facts. Opinion filed March 17, 1905.

KRAMER, KRAMER & SHAEFFER, for appellant; JOHN G. DRENNAN, of counsel.

M. W. SCHAEFER, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was a suit in case, in the Circuit Court of St. Clair county, by appellee against appellant, to recover damages for a personal injury sustained by appellee while in the service of appellant, as a coal miner. Trial by jury. Verdict and judgment in favor of appellee for $1,500.

The amended declaration upon which the case was tried consisted of three counts. At the conclusion of the evidence the trial court excluded the third count, and appellee does not assign cross-error, so we have to consider here only the first and second counts. Both these counts are based upon the same general charge that appellant failed to furnish appellee a reasonably safe place in which to work. They differ somewhat in detail.

In the second count, which sets out the case more fully, it is stated that appellee had worked in a certain room in appellant's mine for a long time and that it was his duty to dig and mine coal in that room, and to perform such other labors about the mine as he might be directed to perform; that on the occasion of his injury he was directed by the manager to clean up and remove some slate that had fallen in the room in which he worked; that it was the duty of appellant to furnish him a reasonably safe place in which to do this work; that the room had a slate roof which was dangerous and liable to fall and that this condition was known to appellant; that when the manager directed appellee to clean up and remove the fallen slate, he informed appellee the room was safe and that appellee relying upon such information went into the room, commenced to work and while performing this work, and in the exercise of due care and caution for his own safety, he was injured by the falling of loose slate from the roof.

The undisputed evidence tends to prove that appellee was 48 years old, had been a coal miner for many years, was conversant with the duties and dangers ordinarily incident to the business of digging and mining coal and the performance of such other labor about the mine as he might be direct-

13

ed to perform; that he had worked in the room in which he was injured for a year immediately preceding, and that he and his "buddy" had driven it from the start, and as they progressed with the work had put in all the props and cap-pieces they thought necessary to support the roof. It was then cut in about 200 feet.

Appellee's own testimony puts his case in the most favorable light for him, and the portions of it bearing upon the questions involved in this appeal are in substance as follows: "I went to the mine on the morning of January 7th, met the manager as I was going down; had a conversation with him; asked him how the place I was working in was, and he says, 'All right, except a few slabs of slate down,' and he said, 'clean it up,' and I went down to clean it up. The fall of slate was about 50 or 60 feet from the face of the coal, and under the practice there the miner is expected to keep himself safe at the face, but he has nothing to do with it about twenty or thirty feet away. If a miner knocks out a prop with a shot, he is supposed to set it again; that is, about twenty feet is the most; he don't go back any further. From twenty feet to the mouth of the entry, the company is supposed to set it again. * * * The slate that would fall back of twenty feet from the face of the coal would be cleaned up by the company. If a miner goes down there, he could send notice to the mine manager to clean it up, or he could wait an hour and clean it up himself and get paid for it, but if he cleaned it up before the hour he would get nothing for it. * * * When I went into the room my buddy was starting to clean up the slate, and I started at the other end; we had a pick and a shovel that I had taken with me; when I got in, I dropped my tools to look around; I saw one piece of slate that was very bad, that was hanging on the top; it was about five or six feet long, and about eighteen inches either way; I pulled it down with my hands, and stepped back about six or eight feet and by that time I was down under another piece; a piece of slate fell on me at another place; it struck me on the head."

Assuming all this to be true, we have a break in the roof

Crown Coal & Tow Co. v. Koenig.

and a fall, at a place where the miner in his capacity of miner is not required to care for it, but where it is the duty of the company to do so. The company undertook the discharge of this duty through appellee and his buddy, two skilled and experienced men, fully conversant with the duties and the dangers incident to the work, who voluntarily undertook to perform it, not as a part of their duty as miners, but as work for which they were to be paid extra. When they reached the place they found, instead of it being "all right, except for a few slabs of slate down," as it was when the manager had seen it, it had in the meantime fallen until it covered the track for fifteen feet and a large nigger head had come down and the roof was in a dangerous condition, and the first thing appellee did was to begin to take down the big loose piece from the roof. On cross-examination appellee stated: "The slate had fallen down for from twelve to fifteen feet * * * do not know how many pieces had fallen, but there were a good many; it covered the track pretty well for about fifteen feet. The largest piece is what we call a nigger head; that is rock and slate and pretty large * * * it took two men to roll it off. * * * I had just stepped back to get my pick and shovel to clean up slate. I needed the shovel to throw some small pieces over on the waste pile; I left them over there until I looked around to see how things were. I always liked to be safe, and was making an examination of the top; we always do that when we clean up slate and we were doing that this time."

Counsel for appellee relies upon the rule that a servant, in entering upon an employment, assumes only such risks as he has notice of, either express or implied; and that it is negligence on the part of a master not to notify a servant of risks, which are known to the master, or which by the exercise of due diligence he might have known, where such risks are not known to the servant and are not open and apparent.

The evidence does not bring this case within that rule. When appellee arrived at the place where the work was to

be done, he saw its *then* condition and was as competent to know, realize and fully understand the extent and nature of the risk and danger as any one, and knew as well how to re-move the peril and to protect himself while doing so as any servant the master could have selected for that purpose. Ap-pellee had actual knowledge. The condition and risk was not only so open and apparent that one of his experience ought to have known it, but he did have actual knowledge, and voluntarily assumed the risk.

The judgment of the Circuit Court is reversed, and this court finds as ultimate facts to be incorporated in the judg-ment, that appellee was injured as the result of risks and hazards, ordinarily and usually incident to the employment in which he was engaged at the time of such injury, and that he voluntarily and with full knowledge of the character of such risks and hazards, assumed the same.

*Reversed with finding of facts.*